Burhans *v.* Haswell.

Judgment accordingly.

[ALBANY GENERAL TERM, December 5, 1864. *Peckham, Miller* and *Ingalls* Justices.]

---

BURHANS and others *vs.* HASWELL, surviving Executor &c of Henry Burhans, deceased.

If a paper purporting to be a codicil to a will is not executed with the formalties required by law, the fact that the same has been presented to the surrogate, with the will, evidence received in regard to it, and the paper recorded by the surrogate in connection with the will, will not add, in any way to its force and validity as a codicil.

If such a paper be defective and informal in all the essential particulars which constitute a legal testamentary disposition of property, the surrogate has no authority to act upon such a case; and though he formally admits the paper to probate, as a codicil, this will not add to its legality. *Per* MILLER, J.

Where heirs have called executors to an account and the account has been rendered upon the basis of a paper claimed to be a codicil to the will, and they have received money under its provisions and by color of the same as a valid instrument, whether they are not estopped from questioning its validity, or avoiding its effect as a part of the will of the testator? *Quære.*

Whether the children of one of the heirs, after having claimed and obtained from the executors the proceeds of a legacy given to such heir and his children, by the codicil, are in a situation to repudiate the alleged codicil, altogether? *Quære.*

In 1823 B., being the owner of three farms, called the homestead, the N. farm, and the W. farm, the latter being occupied by his son H. who was

unthrifty and addicted to intemperate habits, made and executed his will, by which he devised the N. farm to his son D. for life, remainder to his children. In case D. should die leaving no issue, the remainder was devised to the executors in trust to sell the same, and as to one-third of the net proceeds, they were directed to " put out and keep out " the same at interest, said interest to be applied to the support of his son H. during his life, and upon his death and the arrival of his daughter T. to the age of eighteen years, the principal and any remaining interest was to be equally divided among the surviving children of H., share and share alike.' The testator devised the W. farm, also, to his executors, in trust, with directions to sell the same, invest the proceeds and apply the interest to, or towards, the maintenance of his son H. and the education of his children; and when T. should reach the age of eighteen the proceeds were to be divided among the living children of H., share and share alike. The testator, in his lifetime, sold and conveyed the W. farm to one S., receiving back from S. a reconveyance of about nine acres, including the house where H. resided. In September, 1826, the testator gave directions to the attorney who had drawn the will, to have a codicil drawn, to provide for the case of selling the W. farm. A memorandum was accordingly drawn up by the attorney, in the absence of the will, but never executed by the testator, to the effect that instead of the " legacy and devise " to the children of H. the executors should pay the interest of the sum of $3000 towards the support of him and his family, and if that should be insufficient, that the executors appropriate so much of the principal as might be necessary; and that after the death of H. the executors pay and divide the said sum of $3000, or so much thereof as should remain, to and amongst such of the children of H. as might be living at the time of his decease; to be divided in the proportions therein specified.

The testator died in 1826, leaving three sons, J., D. and H. and one daughter, M. D. died in 1861 without issue, upon which the remainder in the N. farm, devised to his heirs, went to the executors in fee, subject to the trust. In 1863 the surviving executor of B. sold the N. farm, for the sum of $9,513.18, which, together with the sum of $800, the gross rent for two years, constituted the fund distributed by the surrogate by the decree appealed from.

*Held* that, assuming that the alleged codicil was to be considered a valid paper in the disposition of the testator's estate, the proper construction of it was that the testator did not intend, by it, to modify or change his original will any further than was required in consequence of the sale made by him of the W. farm; and that he designed merely to make a provision for his son H., and his children, in place of the devise of that farm which he had previously made for their benefit, without interfering with the remaining provisions of his will.

*Held also,* that such codicil not having been executed by the testator, nor formerly declared to be a codicil to his will, nor having any subscribing

witnesses, it was the proof before the surrogate connected with and ex‑ plaining the circumstances under which it was drawn, and that only which made it obligatory in any sense.

That alone, and of itself, without such proof, the paper would have been unavailing for any purpose; and that so far as it was binding upon the children of H. it must be taken and considered in connection with the evi‑ dence introduced before the surrogate to support and sustain it.

That a strict construction should not be put upon the paper, in the same manner as if it was a codicil duly executed according to law; but it must be interpreted in the light of the evidence relating to, and the surrounding circumstances connected with, its origin and existence.

*Held, further,* that the children and grandchildren of H. were entitled to one‑ third of the fund arising from the sale of the N. farm.

THIS is an appeal from the decree of the surrogate's court of the county of Albany, made November 10, 1863, by Hon. GEORGE WOLFORD, then being county judge of said county, and acting as surrogate in the particular case, the surrogate being disqualified by reason of relationship to the parties.

In April, 1823, Henry Burhans, then of the town of Beth‑ lehem, made and executed his last will and testament, and on the 4th day of October, 1826, died, leaving him surviving three sons and one daughter, namely, John H. Burhans, David Burhans, Henry Burhans and Margaret, wife of John Haswell, all of whom are now dead, but all left children still surviving. At the date of the will in April, 1823, the testator was the owner of three several farms in Bethlehem, to wit, the homestead farm of one hundred and ninety-two acres, whereof one half was occupied by his son John H. Burhans, and the other half by John Haswell, the husband of Margaret, the farm known as the Nisketaw farm, and a third called the Wederwax farm. There was proof to show what it is claimed was apparent from the provisions of the will itself, that Henry Burhans, junior, (the son) was unthrifty and addicted to habits of intemperance. Upon the marriage of Henry in 1809, he was placed on a valuable farm, belong‑ ing to the testator, in Greene county, which he continued to occupy free of rent or other charge until 1818, when the

testator, it is said, owing to the improvidence and accumu-
lated debts of his son, sold the farm, and from what remained
of the avails, after paying up the aforesaid debts, he pur-
chased the Wederwax farm, upon which Henry removed
from Catskill, and where he was residing with his family at
the date of the will. By the fourth item of the will, the
testator devised the Nisketaw farm to his son David Burhans
for life, the remainder to his children if any he should have.
But in case David left no issue, said remainder was devised
to the executors, or the survivors or survivor of them, in
trust, to sell the same, and from the net proceeds pay one-
third to "my son John H. Burhans, or his legal representa-
tives;" one other third to "my daughter Margaret or her
legal representatives." The remaining one-third said execu-
tors, the survivors or survivor of them, were directed to "put
out and keep out" at interest, said interest to be applied to
the support of his son Henry during life, and upon his death
and the arrival of his daughter Temperance to the age of
eighteen years, the principal and any remaining interest to
be *equally* divided among the surviving children of Henry,
*share and share alike.* David Burhans, to whom the life
estate was devised, died in May, 1861, without issue; hence
the remainder went to the executors in fee, subject to the
trust created by the will. On the 18th of March, 1863,
John Haswell, the sole surviving executor, sold the Nisketaw
farm for the sum of $9539.18, which, together with the sum
of $800, the gross rent of the same for two years, constituted
the fund distributed by the decree from which this appeal
has been taken.

By the fifth item of the will, the testator devised the
Wederwax farm, also, to his executors in trust, with direc-
tions to sell the same, invest the proceeds and apply the
interest to, or "towards" the maintenance of his son Henry
and the education of his children, during his life and after
his death; and when Temperance should arrive at the age
of eighteen, said proceeds to be equally divided among the

living children of said Henry, share and share alike.  The testator in his lifetime, and in March, 1826, sold and conveyed this farm (Wederwax) to James Schoonmaker, in consideration of $3274, and afterwards, and on the same day, received a deed back from Schoonmaker, reconveying to the testator about nine acres of the same farm, which included the dwelling house in which Henry resided.  Henry continued to live on the nine acres until his death, in 1836, since which time the same has been occupied by his family, or some of them.  About three weeks before the death of the testator, and in September, 1826, he called upon J. I. Ostrander, Esq., of Albany, who had drawn the original will, and stated to him that he wished to have a codicil drawn to be annexed to his will, to provide for the case of selling that farm, which he drew from the testator's words as the statement of what he wished effected by such codicil.  The will was not with the testator at the time, and as correct references could not be made to it, the testator promised to hand it to him.  It was afterwards left at his office in his absence, and was found there the Monday preceding the testator's death.  The paper drawn by Ostrander was as follows:

"*Henry Burhanse's codicil to will.*  1st. That instead of legacy and devise to the children of his son Henry, that (the) executors pay the interest of the sum of $3000, annually, towards the support of him and his family, and if that should be insufficient, that the executors appropriate so much of the principal of the said $3000, as may be necessary for that purpose, and after the decease of his said son Henry, that the said executors pay and divide the said sum of $3000, or so much thereof as shall then remain in their hands, to and amongst such of the children of his said son as may then be living, at the time of his decease; to be divided amongst them, in the following proportions, that is to say:

To the sons of the said Henry two-thirds of the said sum remaining in the hands of the said executors; and to the daughters of the said Henry one-third of the said sum, to

be shared between the said sons and daughters equally in the proportions aforesaid, and that the said proportions be paid to them respectively, as they shall severally, after the death of ($^{his}_{my}$) said son, arrive at the age of 21 years, and if either of the children of ($^{his}_{my}$) said son should die before they arrive at the age of 21 years, the share or portion of those so dying shall be equally divided, if a son amongst the sons, and if a daughter amongst the daughters of ($^{his}_{my}$) said son Henry."

This alleged codicil, though never formally executed by the testator, it is insisted was accepted by all concerned as a part of his will, and with the will was presented for, and it is claimed admitted to, probate by the surrogate of Albany county, on the 13th of October, 1826, and as such has since remained of record. It has been recognized and accepted as a valid and effectual codicil by all persons interested in the estate of the testator, and especially by the children and representatives of Henry Burhans, junior, who have on two former occasions, once in 1829 and again in 1839, applied for and received large distributions made by decrees of the surrogate, founded upon said alleged codicil. After a hearing before the acting surrogate, on the 10th of November, 1863, he made a decree in which he decides that this paper is operative and binding as a codicil upon all parties affected thereby, and that all persons interested are estopped from questioning its validity, and as a consequence the bequest of one-third of the Nisketaw farm to Henry Burhans, junior, after the death of David, was revoked and did not pass under the will; and that neither Henry or his heirs take any interest in the Nisketaw farm except under the residuary clause, and therefore are only entitled to one-third of the proceeds of sale. From this decision the children and grandchildren appealed to the supreme court.

*D. Wright,* for the appellant.

*C. B. Cochran,* for the respondent.

*By the Court,* MILLER, J.   It is too plain to require argument to demonstrate that the paper which was claimed to be a codicil to the last will and testament of Henry Burhans deceased, was not a legal and valid instrument, executed in proper form, so as to constitute it a portion of the testamentary disposition of the property of the testator.   It is true that this paper was presented to the surrogate with the will; evidence was introduced in regard to it, and it was recorded by the surrogate in connection with the will of the decedent. All these formalities, however, which are not recognized in law as applicable to such a paper, will not make a valid codicil of that which the law pronounces to be informal and insufficient for such a purpose.   The law expressly provides what shall constitute the execution of a will or codicil; and it is not claimed that the paper in question was executed in due legal form.   Nor does the fact that the surrogate allowed proof to be taken in regard to it and recorded it, add in any way to its force and validity.   I do not understand that it was formally admitted to probate as a codicil; and if it was, in my judgment it is so strikingly defective and informal in all the essential particulars which constitute a legal testamentary disposition of a testator, that even that fact would not add to its legality.   It is sufficient that the surrogate had no authority to act upon such a case, and his action being entirely without jurisdiction, it must be considered as ineffective and void.

If the paper in question can not be considered as valid and legal and binding of itself, in consequence of the objections which are manifest to it as a codicil to a last will and testament, then another question arises, and that is, whether the persons interested in the estate of the deceased, especially those named in it, have not adopted and acted upon it as a valid instrument, so as to make it obligatory upon them.   It is urged that the heirs of Henry Burhans, junior, having called the executors to an account, and that account having been rendered upon the basis of the alleged codicil, and they

having received money under its provisions and by color of the same as a valid instrument, they are estopped from questioning its validity, or avoiding its effect as a part of the will of the testator. I am inclined to the opinion that there may be some force in this suggestion, and I have some doubt whether the children of Henry Burhans, jr. having claimed and obtained the proceeds of the $3000 named in the alleged codicil, by virtue of it, are now in a position to repudiate it altogether. It is quite possible that to some extent, at least, they are barred by it, and the facts connected with it as presented by the proof before the surrogate prior to its being recorded.

Admitting that it is to be considered as a valid paper in the disposition of the testator's estate, the question then arises, what construction is to be placed upon it? Did the testator intend thereby to modify or change his original will any further than was required in consequence of the sale made by him of the Wederwax farm, and merely to make a provision for his son Henry and his children, in place of the devise of that farm which he had previously made for their benefit; or did he mean that this provision should be in lieu of all specific devises and bequests to them contained in the original will.

In interpreting the paper which is claimed to be a codicil we should not be confined to the paper itself, the same as if it had been actually executed. Alone, and of itself, without the proof connected with and explaining the circumstances under which it was drawn, it would have been unavailing for any purpose, and so far as it is binding upon the children of Henry, it must be taken and considered in connection with the evidence introduced before the surrogate to support and sustain it. It is only that evidence which makes it obligatory in any sense. It was not executed by the testator. It was not formally declared to be a codicil to his will. It had no subscribing witnesses. It must therefore stand or fall with the testimony which was given to establish it. And without this it amounts to nothing. According to the evidence of

Mr. Ostrander, who made the memorandum, the testator called upon him without having the will in his possession, and stated to him that he wished to have a codicil drawn to be annexed to the will, to provide for the case of selling the Wederwax farm. The witness took down the words employed by the testator at the time, and as correct references could not be made to the will, it not being there, the testator promised to bring it at some future time, which he did do, leaving it at the witness' office during his absence. In the light of these facts, it is very apparent that the testator merely intended to make a provision for his son Henry and his children in reference to the Wederwax farm, which he had sold and disposed of, by a pecuniary bequest, and nothing more, without interfering with the remaining portions of his will. If he had desired to cut off his son and his son's children, in regard to the other provisions of the will, he should, and I think he would, have so expressed himself at the time. There is no reason to suppose, from any of the surrounding circumstances of the case, that the testator intended to make any distinction between his heirs as to that portion of his estate which he had devised to his son David during his life, upon the decease of David, or that he desired to dispose of it differently from what was provided by the original will. In fact, there was no good reason existing at that time why he should do so. From any thing that appears, the same friendly feelings existed between the testator and his son Henry at the time he gave directions for a change in his will which had previously been maintained, and there is no proof that the son had done any thing to alienate the affections of his father, although it is urged that Henry's expenses had borne heavily upon the testator, and his habits of intemperance, which had long existed, had increased, yet if such was the fact there is nothing in the proof to show that the testator for a moment took these alleged faults into consideration. No word escaped his lips which denoted in any way that he contemplated a change in his will in conse-

quence of the son's improvidence. If such had been the case, he doubtless would have indicated it, when he gave directions as to the codicil. Then was the time to speak of it; and from the fact that he never said any thing upon that subject, at that time, or at any other time, the inference is irresistible and conclusive that he still clung to him with all the tenacity of an affectionate regard, which he had manifested by the bountiful provision which he had made for him and his children in the original will; and that he was still disposed to extend towards him that exact justice which he had meted out to all his children.

It was the sale of the Wederwax farm, and nothing else, which induced the testator to make the codicil so that his son would be provided for as he had first intended. And I think that the declaration and statement made by him at the time, must be considered, to a great extent, as controlling, and it evinces, beyond any question, that his intention was simply to provide a substitute or the equivalent for the farm devised to Henry and his children which had been sold by him, leaving his will otherwise in full force and effect.

In adopting this construction it may also be observed, that if the testator intended to cut off his son Henry from any further participation in his estate than what is provided for in the statement drawn by Mr. Ostrander, then he died intestate in reference to one third of the proceeds of the Nisketaw farm after the decease of his son David. The original will and the other facts of the case are in conflict with any such hypothesis or presumption.

The fact that in the provision which the testator made for the children of Henry, by the original will, the sons and daughters were made equal, and that by the alleged codicil the sons are to receive more than the daughters, does not in my judgment show that he intended to revoke all the provisions of the original will. It must not be forgotten that the statement made by the testator was but a memorandum

Burhans *v.* Haswell.

taken down by his attorney, without having the will before them at the time, and subject to revision upon its production. Like all such directions preliminary to the drawing and execution of the last will and testament or a codicil, it would be likely to be informal and imperfect, until put in the proper shape, which was intended to be done, but prevented by the unexpected decease of the testator.

It is also insisted that the words "legacy and devise to the children of my son Henry," as used, must be taken in a *collective* sense, and so as to embrace all the provisions of the will made in their behalf. As I have already expressed my opinion substantially, I do not think that a strict construction should be put upon the paper in question, in the same manner as if it was a codicil duly executed according to law ; but it must be interpreted in the light of the evidence relating to, and the surrounding circumstances connected with, its origin and existence. They show pretty conclusively that the testator intended to provide merely for the change he had made by a disposal of the Wederwax farm, and therefore he could not have designed to include, by the terms employed, the devise of the Nisketaw farm as well as the Wederwax farm. Even if a strict construction was adopted, it may be observed that the expression used was not applicable, as no legacy or devise was made to either of the children. They only had a residuary interest in a fund which was provided for, and it is exceedingly doubtful whether the terms employed can be said to include all the provisions of the will.

The examination I have given to the case brings me to the conclusion that the surrogate erred, and the decree should be modified so that the children and grandchildren of Henry Burhans, jr. deceased, shall be entitled to one third of the fund accounted for. No costs of the appeal should be allowed to either party.

[ALBANY GENERAL TERM, December, 5, 1864. *Peckham, Miller* and *Ingalls*, Justices.]